1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                        **CENTRAL DISTRICT OF CALIFORNIA**

10

11   CRAIG ARNOLD THOMAS,              Case No. CV 13-9494 AG (SS)

12                Plaintiff,           **MEMORANDUM AND ORDER**

                                       **DISMISSING COMPLAINT WITH**
13        v.
                                       **LEAVE TO AMEND**
14   JAY SKRENEK, et al.,

15                Defendants.

16

17                                I.

18                            INTRODUCTION

19

20        On  January  27,  2014,  Plaintiff  Craig  Arnold  Thomas

21   ("Plaintiff")  filed  a  civil  rights  complaint  pursuant  to  42

22   U.S.C.  §  1983  (the  "Complaint")  against  various  defendants.

23   (Complaint  at  1-4,  8-10)[1].  For  the  reasons  stated  below,  the

24   Complaint  is  dismissed  with  leave  to  amend.[2]

25   ─────────────────
     [1]  The  Court  will  cite  to  the  Complaint  as  if  it  were  a  single
26   consecutively  paginated  document.

27   [2]  Magistrate  judges  may  dismiss  a  complaint  with  leave  to  amend
     without  approval  of  the  district  judge.  See McKeever v. Block,
28   932 F.2d 795, 795 (9th Cir. 1991).

1    Congress mandates that district courts initially screen
2  civil complaints filed by prisoners seeking redress from a
3  governmental entity or employee.  28 U.S.C. § 1915A(b).  This
4  Court may dismiss such a complaint, or any portions thereof,
5  before service of process if the Court concludes that the
6  complaint (1) is frivolous or malicious, (2) fails to state a
7  claim upon which relief can be granted, or (3) seeks monetary
8  relief from a defendant who is immune from such relief.    28
9  U.S.C. § 1915A(b)(1)-(2); see also Lopez v. Smith, 203 F.3d
10  1122, 1126-27 & n.7 (9th Cir. 2000) (en banc).

11

12                              **II.**

13            **ALLEGATIONS AND CLAIMS OF THE COMPLAINT**

14

15    Plaintiff sues the following nine employees of California
16  Correctional Institution-Tehachapi ("CCI") in both their
17  individual and official capacities:  (1) Correctional Officer
18  Hudson; (2) Law Librarian Carloe,; (3) Law Library Supervisor Jay
19  Skrenek; (4) Fire Chief K. Fried; (5) Correctional Officer C.
20  Chamberlain; (6) Warden Fernando Gonzalez; (7) Chief Deputy
21  Warden M. Stainer; (8) Associate Warden of Business Services M.
22  Carrasco; and (9) Associate Warden Hedgepeth (collectively,
23  "Defendants").[3]  (Complaint at 3-4, 8-10, 13).

24

25  ───────────────
   [3]  Plaintiff lists five Defendants (Hudson, Carloe, Skrenek,
26  Fried, and Chamberlain) on pages three and four of the Complaint,
   while the remaining four Defendants (Gonzalez, Stainer, Carrasco,
27  and Hedgepeth) are listed on pages eight through ten.  The
   Complaint does not provide first names or initials for Defendants
28  Hudson and Carloe.  (Complaint at 3).

1    Plaintiff alleges that Defendants violated his Eighth
2    Amendment rights when they ordered him and two other inmates to
3    move boxes of books "covered in black and green mold" from a
4    storage room without protective gear. (Id. at 7-8).
5    Specifically, from May 26, 2010 through June of 2010, Plaintiff
6    and the other inmates were temporarily reassigned from working at
7    the law library to moving boxes of books from the prison's "silk
8    screen storage room," where they "encountered a strong pungent
9    odor[.]" (Id. at 5, 7). After detecting "the hazardous and
10   poisonous toxic mold[,]" Plaintiff notified Defendants Officer
11   Hudson, Law Librarian Carloe and Law Library Supervisor Skrenek
12   of the black mold and "requested protective gear such as rubber
13   gloves and surgical mask[s] to avoid exposure to the toxic mold."
14   (Id. at 7). However, they denied Plaintiff's request and stated
15   that "'our higher ups failed to provide it so it's out of our
16   hands.'" (Id.). Fire Chief Fried had previously checked the
17   storage room and had determined that the stained and dirty boxes
18   constituted a potential fire hazard, "but failed to do anything
19   once Defendants were made aware of the toxic black mold." (Id.
20   at 9).
21
22   Carloe further stated that "it's a priority [that] the boxes
23   of books be moved" from the storage room and insisted that the
24   job "could not be put off because Chief K. Fried did not provide
25   any protective gear." (Id. at 7). However, Hudson and Carloe
26   "refused to enter the silk schreen [sic] storage room after
27   viewing the toxic black mold." (Id.). Additionally, Plaintiff
28   and the other inmates "personally showed" the toxic mold to

3

1    Skrenek "to make clear the potential health risk in [the]
2    hazardous area." (Id.). Skrenek failed to provide adequate
3    safety equipment and warned Plaintiff to be careful. (Id.).

4

5        The next day, Plaintiff informed Officer Chamberlain about
6    the toxic mold and requested protective gear. (Id. at 8).
7    Instead of providing the gear, Chamberlain merely told Plaintiff
8    to speak with Skrenek. (Id.). Upon Plaintiff's renewed request,
9    Skrenek provided only one pair of cotton gloves to be shared by
10   the three inmates. (Id.). Skrenek further instructed Plaintiff
11   and the other inmates "to avoid carrying the boxes of books so
12   close to [their] mouth and nose to avoid the mold." (Id.). On
13   the third day, after noticing Plaintiff's swollen nose and
14   irritated eyes, Skrenek provided Plaintiff with wet paper towels,
15   rubber gloves and a surgical mask. (Id.).

16

17       As a consequence of his exposure to the mold, Plaintiff
18   suffered a "permanent injury to his lungs and/or respiratory
19   system" and continues to experience chronic nasal and sinus
20   congestion, chest pain, headaches, and eye irritation. (Id. at
21   9-10). Plaintiff was "temporarily subscribe[d]" [sic] nasal and
22   eye medication to treat the nasal and sinus congestion and the
23   "eye burning, reddened eye irritation[.]" (Id. at 10). Also,
24   Plaintiff "was temporarily prescribed pain medication" for the
25   chest pains and headaches. (Id.). "To this present date[,]"
26   Plaintiff has also been prescribed two inhalers to help with his
27   breathing. (Id. at 9).

28

1    Plaintiff alleges that Defendants Hudson, Carloe, Skrenek
2    and Chamberlian "caused wanton and unnecessary infliction of pain
3    and substantial risk of harm to Plaintiff" through their
4    "deliberate indifference to Plaintiff[']s health and safety[.]"
5    (Id. at 11-12).   Similarly, Plaintiff contends that Fried also
6    showed "deliberate indifference to [his] health and safety"
7    because he failed to properly evaluate the work environment and
8    provide protective gear.  (Id. at 9).

9

10   Plaintiff claims that Warden Gonzalez, Chief Deputy Warden
11   Stainer, Associate Warden Carrasco, and Associate Warden
12   Hedgepeth are liable for the actions of Hudson, Carloe, Skrenek
13   and Chamberlain.  (Id. at 8-10).   According to Plaintiff, these
14   four officials "knew or reasonably should have known" about the
15   "unsafe and unhealthy environment" because they are responsible
16   for training employees and making sure that safety and health
17   standards are met.  (Id. at 10-13).

18

19   Plaintiff seeks compensatory damages of $180,000.00,
20   punitive damages of $225,000.00, and "the cost of this suit and
21   any further fee's [sic] the court deems just and necessary."
22   (Id. at 6).  Plaintiff also seeks a declaratory judgment "that
23   defendants['] actions complained of herein violated Plaintiff's
24   rights under the U.S. Constitution in order to prevent future
25   incidents where unsafe unhealthy work environments arise."
26   (Id.).
27   \\
28   \\

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.**

**DISCUSSION**

Under 28 U.S.C. § 1915A(b), the Court must dismiss the Complaint due to defects in pleading.  <u>Pro se</u> litigants in civil rights cases, however, must be given leave to amend their complaints unless it is absolutely clear that the deficiencies cannot be cured by amendment.  <u>Lopez</u>, 203 F.3d at 1127-29.  Accordingly, the Court grants Plaintiff leave to amend, as indicated below.

**A.  <u>The Claims Against Defendants In Their Official Capacity Are Defective</u>**

Plaintiff sues Defendants in both their individual and official capacities.  (Complaint at 3-4, 13).  A suit against a state official in his official capacity is functionally a suit against the state.  <u>Flint v. Dennison</u>, 488 F.3d 816, 824-25 (9th Cir. 2007).  However, the Eleventh Amendment bars federal actions for damages, such as a civil rights suit under Section 1983, against states.  <u>Pena v. Gardner</u>, 976 F.2d 469, 472 (9th Cir. 1992).  Consequently, the Eleventh Amendment also bars claims for damages against state officials acting in their official capacity.  <u>Flint</u>, 488 F.3d at 824-25 ("[S]tate officials sued in their official capacities . . . are not 'persons' within the meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity.").  Thus, the allegations against Defendants in their "official capacity" are defective and must be

6

1    dismissed.  To the extent that Plaintiff intends to seek damages

2    for violation of his civil rights, he may sue Defendants under

3    Section 1983 in their individual capacity only.

4

5    **B.   The Complaint Fails To State An Eighth Amendment Claim As To**

6    **Defendants Gonzalez, Stainer, Carrasco And Hedgepeth**

7

8         Deliberate  indifference  to  serious  medical  needs  of

9    prisoners violates the Eighth Amendment.  West v. Atkins, 487

10   U.S. 42, 49 (1988).  A prisoner must show that he was confined

11   under conditions posing a risk of "objectively, sufficiently

12   serious" harm and that the officials had a sufficiently culpable

13   state of mind in denying the proper medical care.  Morgan v.

14   Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Wallis v.

15   Baldwin, 70 F.3d 1074, 1076 (9th Cir. 1995).  There must be a

16   purposeful act or failure to act on the part of the official

17   resulting in harm to Plaintiff.  See Jett v. Penner, 439 F.3d

18   1091, 1096 (9th Cir. 2006).

19

20        Deliberate indifference "'entails something more than mere

21   negligence.'"  Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir.

22   2005) (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)); see

23   also Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)

24   ("[M]ere malpractice, or even gross negligence," in the provision

25   of medical care does not establish a constitutional violation).

26   A "mere delay" in providing medical treatment does not establish

27   deliberate indifference.  Shapley v. Nevada Bd. of State Prison

28   Com'rs, 766 F.2d 404, 407 (9th Cir. 1985).  "A defendant must

7

1  purposefully ignore or fail to respond to a prisoner's pain or

2  possible medical need in order for deliberate indifference to be

3  established." May v. Baldwin, 109 F.3d 557, 566 (9th Cir. 1997)

4  (internal quotation marks omitted); see also Wallis v. Baldwin,

5  70 F.3d 1074, 1077 (9th Cir. 1995) (finding deliberate

6  indifference where an inmate was required to work in an attic

7  containing asbestos without adequate protection despite

8  circumstantial evidence that should have put prison officials on

9  notice).

10

11     Furthermore, to demonstrate a civil rights violation against

12  government officials, a plaintiff must show either direct,

13  personal participation or some sufficient causal connection

14  between the officials' conduct and the alleged constitutional

15  violation. See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir.

16  2011). To be held liable, a supervising officer has to

17  personally take some action against the plaintiff or "set in

18  motion a series of acts by others . . . which he knew or

19  reasonably should have known, would cause others to inflict the

20  constitutional injury" on the plaintiff. Larez v. City of Los

21  Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotations

22  omitted). Government officials may not be held liable for the

23  unconstitutional conduct of their subordinates just because their

24  subordinates allegedly caused plaintiff harm. See Ashcroft v.

25  Iqbal, 556 U.S. 662, 676 (2009). Rather, "[s]upervisory

26  liability [may be] imposed against a supervisory official in his

27  individual capacity [only] for his own culpable action or

28  inaction in the training, supervision, or control of his

subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." <u>Preschooler II v. Clark County Bd. of Trustees</u>, 479 F.3d 1175, 1183 (9th Cir. 2007).

Here, Plaintiff claims his Eighth Amendment rights were violated when he was assigned to move boxes that contained toxic mold. (Complaint at 7-8). While Plaintiff appears to have adequately alleged claims for deliberate indifference against Defendants Hudson, Carloe, Skrenek, Chamberlain and Fried, he fails to allege sufficient facts showing the participation of Defendants Gonzalez, Stainer, Carrasco and Hedgepeth in the alleged violation. Plaintiff does not state <u>any</u> facts to suggest that these supervisory Defendants had any knowledge that Plaintiff's health was at risk, much less that they were deliberately indifferent to that risk despite having notice. Although Plaintiff generally alleges that Gonzalez, Stainer, Carrasco and Hedgepeth are responsible for training employees and insuring compliance with safety and health standards, these conclusory allegations fail to describe any role or responsibility they had in training Hudson, Carloe, Skrenek or Chamberlain. Even assuming they had any such training responsibilities, Plaintiff fails to establish how that training was defective and directly caused Plaintiff's injuries.

Plaintiff must allege facts showing that each specific Defendant was aware of the hazardous situation but was

deliberately indifferent to the serious health risk it posed. Plaintiff must also explain how each individual Defendant's actions or inactions directly caused a violation of Plaintiff's constitutional rights. Accordingly, the Complaint must be dismissed with leave to amend.

**C.  The Complaint Fails To Satisfy Federal Rule Of Civil Procedure 8**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 555, (2007). Rule 8(e)(1) instructs that "[e]ach averment of a pleading shall be simple, concise, and direct." A complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint. Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1059 (9th Cir. 2011).

Here, the Complaint does not comply with the standards of Rule 8. The Complaint includes repetitious and conclusory allegations. Also, because Plaintiff is not required to provide evidence supporting his claims at this stage of the litigation, the numerous exhibits attached to the Complaint are unnecessary. Plaintiff has also failed to name all Defendants in a single list in the same section of the Complaint. Therefore, the Complaint

does not provide Defendants with fair notice of the claims in a clear and concise statement. See Twombly, 550 U.S. at 555. Accordingly, the Complaint is dismissed with leave to amend. Should Plaintiff choose to file an Amended Complaint, Plaintiff is advised to name all Defendants in the same section of the Complaint and to clearly identify the nature of the legal claims he is brining, the specific facts giving rise to his claims against each individual Defendant, and the relief sought.

## IV.

### CONCLUSION

For the reasons stated above, the Complaint is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a First Amended Complaint. In any amended complaint, the Plaintiff shall cure the defects described above. **Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the original complaint.** The First Amended Complaint, if any, shall be complete in itself and shall bear both the designation "First Amended Complaint" and the case number assigned to this action. It shall not refer in any manner to any previously filed complaint in this matter.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of

11

Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, <u>a copy of which is attached.</u>** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff is strongly encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law or include legal argument. Plaintiff is also advised to omit any claims for which he lacks a sufficient factual basis.

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey Court orders pursuant to Federal Rule of Civil Procedure 41(b). <u>Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiff's convenience.</u>**

DATED:  April 23, 2014

                                    /S/
                            SUZANNE H. SEGAL
                            UNITED STATES MAGISTRATE JUDGE